## Case No. 14,532.

### UNITED STATES v. BARTLETT.

#### [2 Ware (Dav. 9) 17.] [1]

District Court, D. Maine. Dec. Term, 1839.

FISHERIES—BOUNTY—IMPROVIDENT PAYMENT—ACTION TO RECOVER—ENROLLMENT—OATH OF OWNER.

1. The enrollment of a vessel by a collector, without the oath of one of the owners having been previously taken and subscribed in conformity with an act of congress of Feb. 18, 1793, § 2 [1 Stat. 305]. is void, and does not confer on her the rights and privileges of a vessel of the United States.

[Cited in The Henry, Case No. 6,373.]

2. A vessel thus enrolled is not entitled to claim the fishing bounty under the act of July 29, 1813, § 5 [3 Stat. 51].

3. If the bounty has been improvidently paid to a vessel so enrolled by the collector, it may be recovered back by the United States in an action for money had and received.

4. Money paid by an agent under a mistake of the legal obligation of his principal, may, it seems, be recovered back by the principal in an action for money had and received.

[Cited in People v. Fields, 58 N. Y. 505.]

This was an action of assumpsit, brought by the United States to recover back the amount of a fishing bounty, paid to the defendants, as owners of the schooner Gleaner, for the fishing season of 1834. The jury returned a special verdict. The verdict finds that the vessel was employed during four months, in the fishing season of that year, in the cod fisheries, and if, on the facts agreed upon by the parties, and to be taken as part of the finding of the jury, the court is of the opinion that she was a vessel duly qualified, according to law, to carry on the fishing business, then the jury find that the defendants never promised; but if, in the opinion of the court, she was not duly qualified as aforesaid, then the jury find that they did promise in manner and form as the plaintiffs have declared, and assess damages in the sum of $294.91. The agreed facts, which are to be taken as part of the finding of the jury, are in substance as follows: The schooner was enrolled at Thomaston, in the district of Waldoborough, on the 17th of May, 1834, and was then owned and continued to be owned during the whole of that year, by Elbridge G. Wellington, of Boston, in the district of Massachusetts, and George Bartlett and Knott Bartlett, both of St. George, in Maine district. The oath of ownership was not taken and subscribed by either of the owners during the year, but the oath touching the ownership was taken by John Bickman, the master, and the jury further found that enrollments in that office were occasionally made, as a matter of convenience, on the oath of the master only. The same day on which the enrollment was made, the deputy collector granted a license to the vessel to be employed in the cod fishery that season; and the license bond was given in the usual form by

said Bickman. This license was surrendered by Bickman, August 29th of that year, and a new license taken out for the mackerel fishery, which was, October 24th, surrendered by Bickman, and another license taken out for the cod fishery. In each case the license bond was given by Bickman, the master. The last license was surrendered Nov. 24, 1834. The jury further found, that no agreement was made in writing between the skipper and the fishermen, except a blank agreement in print, which was signed by the fishermen, but not filled up. But it was proved by parol, if competent to be so proved, that a verbal agreement was made between the skipper and the crew, by which each man was to receive an equal share of the fish taken, in lieu of wages; and it was further proved, that in the fishing business it was frequently the case, that is, half the time or more, that the shipping paper was brought in not filled up, or was not filled up until the time was completed; and that no objection had been made on that account to the payment of the bounty. The bounty was paid to George Bartlett, Jan. 1, 1835.

Mr. Howard, for the United States, cited Act 1813, c. 34, §§ 5, 8 [2 Story's Laws, 1352, 1353; 3 Stat. 51, 52, c. 35]; Act 1819, c. 212 [3 Story's Laws, 1742; 3 Stat. 520]; Act 1793, c. 52, §§ 1, 2 [1 Story's Laws, 285; 1 Stat. 305, c. 8]; Act 1792, c. 45, § 4 [1 Story's Laws, 269; 1 Stat. 289, c. 1]; Act 1791, c. 102 [1 Story's Laws, 204; 1 Stat. 222]; U. S. v. Rogers [Case No. 16,189]; Johnson v. U. S. [Id. 7,419]; U. S. v. Hoar [Id. 15,373]; U. S. v. Lyman [Id. 15,647].

Fessenden & Deblois, for defendants, cited The Vrow Elizabeth, 5 C. Rob. Adm. 2; The Santissima Trinidad, 7 Wheat. [20 U. S.] 283; Act 1792, c. 45, § 5 [supra]; Act 1793, c. 52 [supra]; The Two Friends [Case No. 14,-289]; Ohl v. Eagle Ins. Co. [Id. 10,472]; Heath v. Hubbard, 4 East. 110; Ratchford v. Meadows, 3 Esp. 69; Abb. Shipp. 67; U. S. v. Hathaway [Case No. 15,326]; Tappan v. U. S. [Id. 13,749]; Child v. Schoemaker [Id. 2,681]; [Wickham v. Blight, Id. 17,611]; Ketland v. Lebering [Id. 7,744]; The Harvey, 2 Hagg. Adm. 79.

WARE, District Judge. This suit is brought by the United States to recover back the amount of a fishing bounty alleged to have been unduly paid to the defendants on the schooner Gleaner, for the fishing season of 1834. The language of the act granting the bounty is, that from and after the last of December, 1814, there shall be paid, on the last of December, annually, to the owner of every vessel, that shall be duly qualified, agreeably to law, for carrying on the bank and other cod fisheries, and that shall have been actually employed therein at sea for the term of four months, at least, of the fishing season next preceding, for each and every ton of such vessel's burden, etc., a sum fixed by the law, provided that the allowance to

no vessel for a single season shall exceed $272, which is enlarged by the act of 1819, c. 212, to $360. Act 1813, c. 34, § 5; 2 Story's Laws, 1352 [3 Stat. 51].

The title of any vessel to claim the bounty, depends, therefore, upon two facts: First, on her being duly qualified, according to law, for carrying on the fisheries; and secondly, on her actual employment in the business for four months during the fishing season. The fact of her actual employment is found by the jury, but whether she was duly qualified or not the jury say that they are not advised, and they find the facts specially touching this point, and refer the question of law arising from them to the judgment of the court. The facts being found, the decision of the question depends on the proper construction of the license and registry acts. The act of Feb. 18, 1793, § 1, commonly called the "License Act," provides that vessels enrolled and licensed in pursuance of that act, "and no others, shall be deemed ships or vessels of the United States, entitled to the privileges of ships and vessels employed in the coasting trade and fisheries." The second section provides, "that in order to the enrollment of any ship or vessel, she shall possess the same qualifications, and the same requisites, in all respects, shall be complied with, as are made necessary for registering ships or vessels by the act of December 31, 1792, and the same duties and authorities are given and imposed on the officers in relation to such enrollments, and the same proceedings shall be had in similar cases, touching such enrollments; and the ships or vessels so enrolled, with the masters or owners, shall be subject to the same requisites as are provided for vessels registered by virtue of that act." To determine, then, whether a vessel has been duly enrolled, so as to secure to her the privileges of an American vessel, it is necessary to examine the registry act. The provisions of that act, the non-compliance with which is supposed to vitiate the papers of this vessel, are found in the fourth section. That requires, "that in order to the registry of any ship or vessel, an oath or affirmation shall be taken and subscribed by the owner, or one of the owners, before the officer authorized to make the registry, declaring, according to his best knowledge and belief, the name of the ship or vessel, her burden, the time and place when and where she was built, etc., and enumerating all the particulars required by the second section of the act to entitle a vessel to be registered, and then provides that in case any of the matters of fact in the oath, which shall be within the knowledge of the person swearing, shall not be true, that there shall be a forfeiture of the ship, her tackle, etc., or of her value, to be recovered of the person by whom the oath is taken." And there is also a provision that if the master is within the district, he shall make oath to his own citizenship. In this case no oath was taken by either of the owners, but the vessel was en-rolled on that of the master alone, in swearing to the same facts, which should be verified by the oath of an owner. It is very certain that the words of the law give no authority to the officer to grant a certificate of enrollment under such circumstances. The act expressly says, that in order to the registry of a ship, and the same is required for an enrollment, an oath shall be taken by the owner or one of the owners. The oath of the master is not required, except as to his own citizenship; and that may be dispensed with, provided he is not within the district, and that of the owner substituted in its stead. But no authority is given to the officer to substitute the oath of the master for that of the owner. It is clear, then, unless the construction of the act can be maintained, which will presently be considered, that the enrollment of the vessel was an improvident and unauthorized act. But it is also clear that the enrollment was not procured by any fraud or deceit, for the certificate on its face shows who the owners were.

Does an enrollment thus made by the proper officer, without any imputation of fraud or deceit on the part of the owners, but without a compliance with the requisites prescribed by the statute, clothe the vessel with the rights and privileges of a vessel of the United States? It is contended that it does; that the act of the officer, the only authorized agent of the plaintiffs, in a case free from fraud or collusion, is binding on the United States; and that papers thus obtained are conclusive evidence that the vessel is entitled to the privileges which the papers purport to grant.

The effect of this decision, it is plain, will be to render the provisions of the act, so far as the consideration of them is involved in the present controversy, merely directory. Such a construction appears to me to be wholly inadmissible. The first section of the act provides that vessels which shall be enrolled in pursuance of this act, and no others, shall be deemed ships or vessels of the United States, and entitled to the privileges of vessels employed in the coasting trade and fisheries. A vessel enrolled in pursuance of the act, is one enrolled in conformity with its directions and requirements. These are enumerated in the first eight sections of the registry act, and the ninth provides that, "the several matters hereinbefore required having been complied with," the collector shall grant the certificate. It seems, at the first view, that the collector is not authorized to grant the certificate without a compliance with all the requirements of the act. Still, though the first section of the act declares that no other vessels than those enrolled in pursuance of the act, shall be entitled to the privileges of enrolled vessels, and the ninth section apparently exacts a compliance with all the requirements, previously to the issuing of the certificate, it may, perhaps, appear, on a critical examination of the act, that an omission

to comply with some of its directions, previous to the enrollment, will not absolutely vitiate and render void the ship's papers. This is, however, a question which it is not necessary to decide in the present case. And should it be conceded that some of the clauses in the first eight sections are essentially directory to the officers, a strict compliance with which is not absolutely indispensable to the validity of the ship's papers, it appears to me that the provisions of the fourth section cannot be admitted to be of that character. That section requires, in order to the registry of a ship, that an oath shall be taken and subscribed by the owner or one of the owners, verifying the matters therein stated. The matters of fact included in the oath, besides several others, are all those enumerated in the second section, as being essential to entitle a vessel to be registered, and it is provided that if any of the matters of fact, within the knowledge of the person swearing, are not true, there shall be a forfeiture of the vessel, in respect to which the oath is taken, or of her value, to be recovered of the person by whom the oath or affirmation is made. Besides, some of the facts, required to be sworn to, are of a nature not to be known by any but the owners; as whether any foreigner has a secret interest in the vessel, by way of trust or confidence. If the master's oath may be substituted for that of the owners, he can only swear according to his knowledge and belief. A secret trust may exist in a foreigner, without his knowing it; and the only way, in which that can be effectually guarded against, is by requiring the oath of the owners. It would be an entirely unjustifiable construction of this section, to hold it to be merely directory to the officer, as to the manner in which he is to execute his duty; and that it may be neglected by the owner, without any peril to his interest, provided the officer chooses from any cause to grant a certificate without requiring the oath, or to accept that of the master instead of the owners. But if any doubt could be raised as to the proper construction of this section of the act standing by itself, it would be removed by the fifth section. That requires, when papers are granted on the oath of one of the owners, that the other owners shall, within three months after, transmit to the collector, who granted the papers, a similar oath, or the papers shall be forfeit and void. If an oath of an owner can be dispensed with in the first instance, and valid papers granted without it, there would seem to be little reason in rendering them void, on a neglect by the other part-owners to transmit a similar oath.

But it is said, that while the license act requires the same qualifications of the vessel, and makes the same requisites necessary for the enrollment, as for the registry, of a vessel, it nowhere denounces the same penalties and forfeitures. This is true; but if the construction, now given to the act, be correct, this does not reach the difficulty of the defense of this action. This is not a suit for a penalty, but to recover back of the owner a sum of money alleged to have been unduly paid. The question is not whether the vessel has forfeited the privileges of an enrolled vessel, but whether, under this enrollment, she can have acquired them.

Another ground of argument urged in the defense is, that the enrollment having been regularly made, by the proper officer, without any imputation of fraud on the part of the owners, the certificate is conclusive proof that the vessel is entitled to the privileges which it purports to grant, and that the act of the officer, being the authorized agent of the plaintiffs, is conclusive upon them. It is true that in some cases a ship's papers are conclusive, and a party is not at liberty to contradict them. They are conclusive, in questions of prize, against the claimants, to show the national character of the ship. 5 C. Rob. Adm. 2; The Santissima Trinidad, 7 Wheat. [20 U. S.] 283. They are conclusive, also, against the insured, in a suit on the policy, to prove the ownership to be as the papers represent it. Ohl v. Eagle Ins. Co. [Cases Nos. 10,472, 10,473]. A party will not be permitted to deny the verity of documentary evidence, which he has himself procured, and the benefit and protection of which he has enjoyed. But in neither of these cases would the opposite party be concluded by the ship's papers. They would be allowed to disprove their truth by every species of legal evidence. If the grant of this certificate had been the personal act of the plaintiffs, certainly they would not easily be allowed to deny its validity, issued as it was with a full knowledge of the facts. But it is no otherwise their act than as it was done through the instrumentality of their agent. The law of agency is well settled. The act of the agent is not considered as the act of the principal, except when it is within the limits of his authority. If he transcends his authority or violates his instructions, the principal may repudiate the act as void, unless, from the course of dealing, those who treat with the agent are justified in inferring that he is clothed with larger powers or intrusted with a wider discretion. But in this case the authority of the agent and his instructions are found in the public laws, which the defendants, like all other persons, are bound to know. There is, therefore, no pretense for saying, that the act of the agent is binding on the principal, unless it is fairly within the limits of his authority. So that we are brought back to the question, whether the officer was authorized to make the enrollment without the oath of one of the owners, or, in other words, whether the provisions of the fourth section of the registry act are merely directory to the officer, to regulate his discretion in the execution of his trust, or whether a compliance with them is an indispensable prerequisite to the validity of the enrollment.

Another point of the defense, strongly insisted upon at the hearing, turns rather upon the form of the action. This is an action for money had and received, which, it is argued, is a strictly equitable action, and lies only when a party has received money, which, ex æquo et bono, he ought to refund; that when a party is, by the general principles of equity and good conscience, entitled to retain the money, it cannot be recovered in this form of action, though the party might not have been able, upon the strict principles of law, to prevail in a direct suit for it. Now it is said that this money was paid upon a contract, or quasi contract, between the parties; that the plaintiffs, by the law of 1813, promised to the owners of any duly qualified fishing vessel, that should be employed in the fisheries during four months of the fishing season, a certain sum of money; that the bounty constitutes one of the substantial inducements to the fishermen to engage in the business; that the object of the law is, to encourage the fisheries, as a nursery of seamen, for the general interest of the country, and to promote the navigating interest, by furnishing employment for American shipping; that this vessel, being American built and owned, and having been actually employed the time required, by American seamen, the public policy and objects of the law are satisfied. The terms of the contract having been substantially complied with on the part of the defendants, equity, it is said, will relieve them from an inadvertent omission to comply with conditions, that are merely formal and do not enter into the essence of the consideration.

The first difficulty, which this argument has to encounter, is that it assumes as a fact, that this vessel possessed all the intrinsic qualities which entitled her to be enrolled as an American vessel. This may be true, but it is a fact not found by the jury, and cannot be presumed by the court. The question is, what judgment shall be rendered on this verdict; and upon this question the court can look to no other facts, than what are apparent upon its face. If the fact, then, were as the argument assumes it to be, it ought to have been specially found by the jury. But supposing this difficulty overcome, it would not, in my opinion, relieve the defendant's case. If the construction which has been given to the law is correct, that is, if the oath of the owner is an indispensable prerequisite to the validity of the enrollment, then no bounty was due. A vessel with papers which are void, is like a vessel without papers. She is entitled to none of the privileges of an American ship, wherever she may have been built, or however owned and navigated. In the eye of the law she is considered as a foreign vessel, and can claim only the privileges of a foreign vessel. And such a vessel can, under no circumstances, entitle herself to the fishing bounty. The payment was, therefore, clearly made under a mistake, and

the action for money had and received is the appropriate action to recover back money so paid. It may, however, be objected, that if it was paid by mistake, it was a mistake of law and not of fact; and that money paid under a mistake of law, merely, is not subject to repetition. The principle, when stated in general terms, and as a universal proposition, is not, perhaps, entirely free from difficulty. In the civil law, opinions of great authority are ranged on opposite sides of the question. The framers of the French code, with all the authorities of the civilians before them, decided against the principle, and allow money paid under a mistake of law to be recovered, when the payment is supported by no moral or honorary obligation, and can be ascribed to no other cause but a mistake by the party of his legal obligation. Code Civile, 1377; Toullier, Code Civile Francais, vol. 6, No. 75; Ib. vol. 11, No. 63. In the common law, the authorities are not entirely agreed, though the preponderance of authority is against the recovery back of money in such a case. 1 Story, Eq. 121, note 2. But however it may be when the money is paid by the supposed debtor, no case, that I am aware of, has gone so far as to decide that an unauthorized payment by an agent, from an erroneous opinion of the legal obligation of his principal, shall be binding on the principal, and that he cannot recover back money thus unduly paid. See Story, Ag. § 435; Elliot v. Swartwout, 10 Pet. [35 U. S.] 153.

Upon the whole, my opinion is, that the enrollment of the vessel by the officer, without the oath of one of the owners previously taken and subscribed in conformity with the directions of the act of December 31, 1792 (section 4), was void, and did not confer on the vessel the privileges of a vessel of the United States, and consequently she could not be entitled to the fishing bounty; and that the bounty, having been improvidently paid, may be recovered back by the plaintiffs, in an action for money had and received. Judgment must, therefore, be entered for the plaintiffs for the sum found by the jury. This view of the case being decisive, renders it unnecessary to consider the other question arising on the verdict.